IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES B. VAN DUZER and | § | |
| CANDACE B. VAN DUZER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | CIVIL ACTION NO. H-13-1398 |
| Individually and as TRUSTEE FOR | § | |
| RASC 2006-KS5; MERSCORP | § | |
| HOLDINGS, INC.; MORTGAGE | § | |
| ELECTRONIC REGISTRATION SYSTEMS, | § | |
| INC.; and UNKNOWN CLAIMANTS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Charles B. Van Duzer and Candace B. Van Duzer (collectively, "Plaintiffs") brought this pro se action against defendants U.S. Bank National Association, Individually and as Trustee for RASC 2006-KS5 ("US Bank"), Merscorp Holdings, Inc. ("Merscorp"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants") alleging causes of action related to the origination, subsequent assignment, and attempted foreclosure of a home equity loan. Pending before the court is Defendants' Motion for Judgment on the Pleadings and Incorporated Brief in Support Thereof ("Defendants' 12(c) Motion") (Docket Entry No. 12). For the reasons explained below, Defendants' 12(c) Motion will be granted.

## I. **Background**

On February 21, 2006, Plaintiffs obtained a $556,000 home equity loan from Homecomings Financial Network, Inc. ("Homecomings").[1] The loan was evidenced by a Note[2] and secured by a first lien on Plaintiffs' property.[3] MERS was identified as "the beneficiary under [the] Security Instrument."[4] GMAC Mortgage LLC ("GMAC") was the loan servicer.[5]

### A. **Plaintiffs' Bankruptcy**

In July of 2007 MERS, as nominee for Homecomings, sought a judicial foreclosure on Plaintiffs' property under the terms of the Security Instrument.[6] On August 30, 2007, Plaintiffs filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Texas.[7] On November 29, 2007, Plaintiffs' Chapter 13 Plan was confirmed by the bankruptcy court.[8]

---

[1] Texas Home Equity Adjustable Rate Note ("Note"), Exhibit 2 to Defendants' 12(c) Motion, Docket Entry No. 12-1.

[2] Id.

[3] Texas Home Equity Security Instrument ("Security Instrument"), Exhibit 1 to Defendants' 12(c) Motion, Docket Entry No. 12-1.

[4] Id. at 2.

[5] Complaint, Docket Entry No. 1, p. 4 ¶ 10.

[6] Id. ¶ 12; Defendants' 12(c) Motion, Docket Entry No. 12, p. 2 ¶ 3.

[7] Complaint, Docket Entry No. 1, p. 5 ¶ 13.

[8] Order Confirming Chapter 13 Plan and Valuing Collateral Pursuant to 11 U.S.C. § 506, Exhibit 6 to Defendants' 12(c) Motion, Docket Entry No. 12-2.

On  January  25,  2008,  Plaintiffs  sought  to  convert  their
bankruptcy from a Chapter 13 proceeding to a Chapter 7 proceeding.[9]
On February 19, 2008, Plaintiffs moved to strike Homecomings' proof
of claim, arguing that Homecomings was not the owner of the Note
and Security Instrument.[10]   On March 13, 2008, Plaintiffs filed a
motion  for  leave  to  sell  the  property  at  issue  in  this  case.[11]
Concluding  that  the  property  was  exempt,  the  bankruptcy  court
entered an order on March 31, 2008, authorizing Plaintiffs to sell
the property.[12]   The order required "all liens [to] be paid at
closing, in accordance with state law" and stated that the property
"may  not  be  sold  unless  the  liens  are  paid  at  closing."[13]    The
bankruptcy  court  determined  that  its  order  mooted  Plaintiffs'
motion to strike Homecomings' proof of claim.[14]  Plaintiffs received
a Chapter 7 discharge on July 9, 2008.[15]

---

[9]Debtors Notice  of  Conversion,  and  Objection  to  Trustee's
Motion  to  Dismiss,  Exhibit  8  to  Defendants'  12(c)  Motion,  Docket
Entry No. 12-2.

[10]Motion  to  Strike  Proof  of  Claim  and  Amended  Proof  of  Claim
Filed  by  Homecomings  Financial,  LLC,  Exhibit  10  to  Defendants'
12(c) Motion, Docket Entry No. 12-2.

[11]Motion  for  Leave  to  Sell  Real  Property,  Exhibit  11  to
Defendants' 12(c) Motion, Docket Entry No. 12-2.

[12]Order Approving Sale of Homestead, Exhibit 12 to Defendants'
12(c) Motion, Docket Entry No. 12-2.

[13]Id.

[14]Id.

[15]Discharge of Debtors, Exhibit 13 to Defendants' 12(c) Motion,
Docket Entry No. 12-2.

On January 12, 2009, GMAC filed a motion to lift the automatic stay with regard to the property.[16]   On February 12, 2009, the bankruptcy court denied the motion as moot because Plaintiffs were "granted a bankruptcy discharge" and "[u]pon the granting of their discharge, the automatic stay against exempt property terminated."[17] Plaintiffs appealed the bankruptcy courts' Order on February 17, 2009.[18]   The Order was affirmed by the district court on October 28, 2009.[19]

## B.   The Prior Lawsuit

Plaintiffs filed suit against Homecomings, MERS, GMAC, and Residential Funding Company, LLC (collectively, "the 2010 Defendants") on January 29, 2010, to prevent a judicial foreclosure on the property.[20]   The 2010 Defendants removed the case to the United States Court for the Southern District of Texas on February 16, 2010.[21]    Plaintiffs filed their First Amended

---

[16]Motion for Entry of Agreed Order Granting Relief from Automatic Stay [and Co-Debtor Stay] Regarding Exempt Property, Exhibit 14 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[17]Order, Exhibit 16 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[18]Notice of Docketing an Appeal under Bankruptcy Rule 8007(b), Exhibit 17 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[19]In re Van Duzer, No. H-09-457 (S.D. Tex. Oct. 28, 2009), Exhibit 20 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[20]Complaint, Docket Entry No. 1, p. 6 ¶¶ 18-19; Plaintiff's Original Petition, Exhibit 21 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[21]Complaint, Docket Entry No. 1, p. 7 ¶ 19; Defendants' 12(c) Motion, Docket Entry No. 12, p. 6 ¶ 23.

Petition/Complaint in federal court on June 16, 2010.[22]   On September 27, 2010, the lawsuit was remanded to state court.[23]   On October 20, 2011, the 2010 Defendants filed a motion for summary judgment in state court.[24]   The state court granted the motion for summary judgment on December 8, 2011.[25]

## C.   The Current Lawsuit

The Note and Security Instrument were assigned to US Bank on June 12, 2012.[26]   On April 3, 2013, US Bank sought a judicial foreclosure under the terms of the Security Instrument.[27]   On May 14, 2013, Plaintiffs filed this suit against Defendants.[28]   Defendants filed their Answer on June 3, 2013.[29]

---

[22]Plaintiffs' First Amended Petition/Complaint, Exhibit 22 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[23]Van Duzer v. Homecomings Fin., L.L.C., No. H-10-490, 2010 WL 3824630 (S.D. Tex. Sept. 27, 2010).

[24]Defendants' 12(c) Motion, Docket Entry No. 12, p. 7 ¶ 27; Defendants Homecomings Financial, L.L.C.'s, Residential Funding Company LLC's and GMAC Mortgage, LLC's Motion for Summary Judgment ("2010 Defendants' Motion for Summary Judgment"), Exhibit 23 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[25]Order, Exhibit 24 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[26]Assignment of Deed of Trust ("Assignment"), Exhibit 3 to Defendants' 12(c) Motion, Docket Entry No. 12-1.

[27]Application for Expedited Foreclosure Proceeding Pursuant to Rule 736 of the Texas Rules of Civil Procedure ("April 3, 2013, Judicial Foreclosure Application"), Exhibit 25 to Defendants' 12(c) Motion, Docket Entry Nos. 12-3, 12-4, 12-5.

[28]Complaint, Docket Entry No. 1.

[29]Answer to Plaintiffs' Complaint, Docket Entry No. 3.

Defendants' 12(c) Motion was filed on August 16, 2013.[30]
Plaintiffs filed a motion for leave to conduct discovery on
September 3, 2013.[31]  Defendants filed a response on September 9,
2013.[32]  The court denied Plaintiffs' motion on September 10, 2013.[33]

Plaintiffs filed their Response to Defendants' 12(c) Motion on
September 12, 2013.[34]  Defendants filed a reply on September 19,
2013.[35]  On September 25, 2013, Plaintiffs filed their Supplemental
Response to Defendants' 12(c) Motion.[36]

## II.  **Applicable Law**

### A.  **Motion for Judgment on the Pleadings**

A motion brought pursuant to Federal Rule of Civil Procedure
12(c) should be granted if there is no issue of material fact and
if the pleadings show that the moving party is entitled to judgment
as a matter of law.  Greenberg v. General Mills Fun Group, Inc.,

---

[30]Defendants' 12(c) Motion, Docket Entry No. 12.

[31]Motion to Seek Leave to Conduct Discovery Regarding the
Defenses Asserted by the Defendants in their Motion for Judgment on
the Pleadings, Docket Entry No. 14.

[32]Defendants' Opposition to Plaintiffs' Motion to Seek Leave
to Conduct Discovery, Docket Entry No. 16.

[33]Order, Docket Entry No. 17.

[34]Response to Defendants Motion for Judgment on the Pleadings,
Docket Entry No. 18.

[35]Defendants' Reply Brief in Further Support of their Motion
for Judgment on the Pleadings, Docket Entry No. 19.

[36]Plaintiffs Supplemental Response to Defendants Motion for
Judgment on the Pleadings, Docket Entry No. 20.

-6-

478 F.2d 254, 256 (5th Cir. 1973). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss for failure to state a claim. See In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 209 (5th Cir. 2010); Guidry v. American Public Life Insurance Co., 512 F.3d 177, 180 (5th Cir. 2007); Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam).

The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiffs, and draw all reasonable inferences in the plaintiffs' favor. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001); Jones, 188 F.3d at 324.

> "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974)). To avoid dismissal a plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'" Doe v. MySpace, Inc., 528 F.3d 413, 418 (5th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). Plausibility requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 127 S. Ct. at 1966) (internal quotation marks omitted). The court will "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010). "[D]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill, 561 F.3d 377, 384 (5th Cir. 2009).

When considering a motion to dismiss courts are generally "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)); see also C.H., II ex rel. L.H. v. Rankin Cnty. Sch. Dist., 415 F. App'x 541, 545 (5th Cir. 2011) ("A district court may look to the pleadings and any documents attached thereto."); cf. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002) (surveying the Fifth Circuit's jurisprudence regarding "the documents that a district court may properly consider in deciding a Rule 12(c)

-8-

motion"). In addition, the court may take judicial notice of matters of public record, including pleadings filed in state court. See Joseph v. Bach & Wasserman, L.L.C., 487 F. App'x 173, 178 (5th Cir. 2012) ("[T]he court may take judicial notice of matters of public record. Here, the document referenced is a pleading filed with a Louisiana state district court, and it is a matter of public record." (citation omitted) (citing Funk v. Stryker Corp., 631 F.3d 777 (5th Cir. 2011))); Norris v. Hearst Trust, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd., 914 F.2d 74, 76 (5th Cir. 1990) ("A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.").

When a party presents "matters outside the pleadings" with a motion to dismiss, the court has discretion to either accept or exclude the evidence for purposes of the motion to dismiss. See McBurney v. Cuccinelli, 616 F.3d 393, 410 (4th Cir. 2010) ("'As is true of practice under Rule 12(b)(6), it is well-settled that it is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c).'" (quoting 5C

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed. 2010))); <u>Isquith ex rel. Isquith v. Middle South Utilities, Inc.</u>, 847 F.2d 186, 194 n.3 (5th Cir. 1988) ("Rule 12(b) gives a district court 'complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." (quoting 5C Charles A Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (1969))). However, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Plaintiffs have attached a copy of defendant US Banks' April 3, 2013, Judicial Foreclosure Application to their Complaint.[37] Included with the application are copies of the Note,[38] Security Instrument,[39] and Assignment.[40] These documents were also

---

[37]April 3, 2013, Judicial Foreclosure Application, Exhibit B to Complaint, Docket Entry No. 1-2.

[38]Note, attached to April 3, 2013, Judicial Foreclosure Application, Exhibit B to Complaint, Docket Entry No. 1-2.

[39]Security Instrument, attached to April 3, 2013, Judicial Foreclosure Application, Exhibit B to Complaint, Docket Entry Nos. 1-2, 1-3.

[40]Assignment, attached to April 3, 2013, Judicial Foreclosure Application, Exhibit B to Complaint, Docket Entry No. 1-3.

attached to Defendants' 12(c) Motion.[41]  Because these documents are referenced in Plaintiffs' Complaint and central to Plaintiffs' claims, the court concludes that they can be considered without converting the motion to dismiss to a motion for summary judgment. Also attached to Defendants' 12(c) Motion are copies of the pleadings and related orders in Plaintiffs' bankruptcy proceeding[42] and the following documents from Plaintiffs' prior lawsuit against the 2010 Defendants:   (1) Plaintiff's Original Petition,[43] (2) Plaintiffs' First Amended Petition/Complaint,[44] (3) the 2010 Defendants' Motion for Summary Judgment,[45] and (4) the state court's Order granting the 2010 Defendants' Motion for Summary Judgment.[46] Because these documents are matters of public record of which the court may take judicial notice, the court concludes that they can

---

[41]Note, Exhibit 2 to Defendants' 12(c) Motion, Docket Entry No. 12-1; Security Instrument, Exhibit 1 to Defendants' 12(c) Motion, Docket Entry No. 12-1; Assignment, Exhibit 3 to Defendants' 12(c) Motion, Docket Entry No. 12-1; April 3, 2013, Judicial Foreclosure Application, Exhibit 25 to Defendants' 12(c) Motion, Docket Entry Nos. 12-3, 12-4, 12-5.

[42]Exhibits 4-20 to Defendants' 12(c) Motion, Docket Entry Nos. 12-2, 12-3.

[43]Plaintiff's Original Petition, Exhibit 21 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[44]Plaintiffs' First Amended Petition/Complaint, Exhibit 22 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[45]2010 Defendants' Motion for Summary Judgment, Exhibit 23 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

[46]Order, Exhibit 24 to Defendants' 12(c) Motion, Docket Entry No. 12-3.

be considered without converting the motion to dismiss to a motion for summary judgment.

**B.   Res Judicata**

"A federal court asked to give res judicata effect to a state court judgment must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." E.D. Sys. Corp. v. Sw. Bell Tel. Co., 674 F.2d 453, 457 (5th Cir. 1982); see also Norris, 500 F.3d at 460-61 ("[T]he preclusive effect of prior state court proceedings on federal proceedings is determined by the treatment those state court proceedings would receive in the courts of the state -- here, Texas -- in which those prior proceedings were held."); Rollins v. Dwyer, 666 F.2d 141, 144 (5th Cir. 1982) ("A state court judgment commands the same res judicata effect from the federal court as it would have in the court that rendered it, without regard to whether the state court applied state or federal law."). Therefore, the court must look to Texas law to determine the preclusive effect of the state courts' decision in the Plaintiffs' prior lawsuit.

In Texas, "[r]es judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action." Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996) (citing Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992)).  It is an affirmative defense. Tex. R. Civ. P. 94;

Zurita v. Lombana, 322 S.W.3d 463, 474 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); Serrano v. First Prestons Mgmt. Corp., 346 S.W.3d 648, 650 (Tex. App.—El Paso 2009, no pet.).  The party claiming the defense must prove "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action."  Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 449 (Tex. 2007) (citing Amstadt, 919 S.W.2d at 652).

"Under the transactional approach followed in Texas, a subsequent suit is barred if it arises out of the same subject matter as the prior suit, and that subject matter could have been litigated in the prior suit."  Id. (citing Barr, 837 S.W.2d at 631).  "A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation."  Barr, 837 S.W.2d at 630.  "It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action."  Id.  This determination should be made "pragmatically, 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.'"  Daccach, 217 S.W.3d at 449 (quoting Barr, 837 S.W.2d at 631).  "Any cause of action which arises out of those same facts should, if

-13-

practicable, be litigated in the same lawsuit." <u>Barr</u>, 837 S.W.2d at 630.

## C.   Pleading Fraud Claims

Federal Rule of Civil Procedure 9(b) imposes a heightened level of pleading for fraud claims. A party bringing a fraud claim "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff must therefore "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 551 (5th Cir. 2010) (quoting <u>ABC Arbitrage v. Tchuruk</u>, 291 F.3d 336, 350 (5th Cir. 2002)).

## III.   <u>Applicability of Res Judicata</u>

Although it is an affirmative defense, "[d]ismissal . . . on res judicata grounds may be appropriate when the elements of res judicata are apparent on the face of the pleadings." <u>Dean v. Mississippi Bd. of Bar Admissions</u>, 394 F. App'x 172, 175 (5th Cir. 2010); <u>see also</u> <u>Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Texas</u>, 20 F.3d 1362, 1366 (5th Cir. 1994) ("[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate."); <u>Clark v. Amoco Prod. Co.</u>, 794 F.2d 967, 970 (5th Cir. 1986) ("Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim

-14-

may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings."); Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982) "[A] complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action."). But see Hall v. Hodgkins, 305 F. App'x 224, 227 (5th Cir. 2008) ("'[G]enerally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense.'" (quoting Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 n.2 (5th Cir. 2005))).

A pragmatic consideration of the Plaintiffs' prior lawsuit reveals that the factual basis for that suit involved the events surrounding the initial lending transaction between Plaintiffs and Homecomings. Specifically, Plaintiffs challenged the role of MERS as "nominee" and "beneficiary" under the Security Instrument,[47] Homecomings' role as lender in the initial lending transaction,[48] the validity and enforceability of the Security Instrument and resulting lien on the property,[49] the representations of the 2010 Defendants pertaining to the initial lending transaction,[50] and the right of the

---

[47]Plaintiffs' First Amended Petition/Complaint, Exhibit 22 to Defendants' 12(c) Motion, Docket Entry No. 12-3, pp. 3-5 ¶¶ 9-12, pp. 11-12 ¶¶ 33-35.

[48]Id. at 5 ¶ 12.

[49]Id. at 4 ¶ 10, 6 ¶ 17, 7 ¶ 21.

[50]Id. at 5 ¶ 13, 7 ¶ 18, 8-9 ¶¶ 21-28, 11-12 ¶¶ 32-35.

2010 Defendants to foreclose.[51]  Under Texas law any claims arising out of the same subject matter are barred by the doctrine of res judicata in this court.  Daccach, 217 S.W.3d at 449; Amstadt, 919 S.W.2d at 652.  Accordingly, to the extent that any of Plaintiffs' claims are based on the circumstances and events surrounding the initial lending transaction, as described above, they are barred and subject to dismissal.  Dean, 394 F. App'x at 175.

## IV.  Defendants' Standing to Foreclose

Throughout their Complaint Plaintiffs raise several challenges to Defendants' standing to foreclose under the terms of the Security Instrument.[52]  As explained in § III above, to the extent that any of Plaintiffs' claims are based on the events and circumstances surrounding the initial lending transaction, including MERS' and Homecomings' roles in that transaction, they are barred by the doctrine of res judicata.  However, several of Plaintiffs' allegations regarding Defendants' standing to foreclose are based on the validity of the subsequent assignment of the Security Instrument from MERS, as nominee for Homecomings, to US Bank on June 12, 2012.[53]

---

[51]Id. at 6 ¶ 17, 7 ¶¶ 19-21, 9 ¶¶ 27-28.

[52]See, e.g., Complaint, Docket Entry No. 1, p. 4 ¶ 12, pp. 15-16 ¶¶ 50-51, pp. 26-27 ¶¶ 92-95, p. 39 ¶ 144, pp. 43-44 ¶¶ 159-60, p. 46 ¶ 169, pp. 48-50 ¶¶ 175-86, pp. 58-61 ¶¶ 214-27, pp. 73-74 ¶¶ 266-69, p. 91 ¶ 332, pp. 92-93 ¶¶ 336-45, pp. 112-13 ¶¶ 428-34, pp. 118-19 ¶¶ 455-59.

[53]See id. at 4-5 ¶ 12, 15-16 ¶ 50, 26 ¶ 92, 43-44 ¶¶ 158-62, 46 ¶¶ 167-69, 58-61 ¶¶ 214-27, 91 ¶ 332, 92 ¶¶ 336-37, 118-19 ¶¶ 455-59.

**A.   Plaintiffs' Allegations**

Plaintiffs appear to advance five reasons why Defendants allegedly lack standing to foreclose:  (1) Defendants do not possess the original Note,[54] (2) The Note was rendered unsecured by the bifurcation of the Note and the Security Instrument,[55] (3) the inclusion of the Note in a securitized trust rendered the Security Instrument unenforceable,[56] (4) the Assignment was a forgery,[57] and (5) MERS did not have authority to execute the Assignment.[58]

Plaintiffs' contention that Defendants must produce the original Note in order to foreclose has no merit under Texas law.[59] See Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 254 (5th Cir. 2013) (rejecting the "show-me-the-note" theory and noting that "[n]umerous federal district courts have . . . concluded that Texas recognizes assignment of mortgages through MERS and its equivalents as valid and enforceable without production of the original, signed note").  Furthermore, Plaintiffs' arguments that Defendants lack standing to foreclose because they are not the

_____

[54]See id. at 8 ¶ 26, 9 ¶ 34, 59–60 ¶¶ 219–20, 94 ¶ 352.

[55]See id. at 60 ¶ 221, 62 ¶ 231, 27 ¶ 95.

[56]See id. at 46 ¶¶ 167–69, 62 ¶ 231, 104–05 ¶¶ 389–90, 107 ¶ 406.

[57]See id. at 43–44 ¶¶ 158–62, 58–61 ¶¶ 214–27, 61 ¶¶ 226–27, 91 ¶ 332, 118–19 ¶¶ 455–59.

[58]See id. at 4–5 ¶ 12, 27 ¶ 95, 42–43 ¶¶ 154–55, 58–61 ¶¶ 214–27, 92 ¶¶ 336–37, 118–19 ¶¶ 455–59.

[59]See id. at 9 ¶ 34, 59–60 ¶¶ 219–25, 79 ¶ 291.

holder in due course[60] of the Note, and that bifurcation of the Note and Security Instrument rendered the Note unsecured,[61] have no merit because, under Texas law, "the beneficiary of the lien can be different from the holder of the note" and "'[t]he party to foreclose need not possess the note itself.'" <u>Wiley v. Deutsche Bank Nat. Trust Co.</u>, No. 12-51039, 2013 WL 4779686, at *2 (5th Cir. Sept. 6, 2013) (quoting <u>Martins</u>, 722 F.3d at 255). "So long as it is a beneficiary named in the deed of trust or an assign, that party may exercise its authority even if it does not hold the note itself." <u>Id.</u>

Plaintiffs' argument that inclusion of their mortgage in a securitized trust renders the Security Instrument unenforceable is also unavailing.  Courts routinely reject arguments that securitization of a mortgage renders the Security Instrument unenforceable.  See <u>Marban v. PNC Mortgage</u>, No. 3:12-CV-3952-M, 2013 WL 3356285, at *10 (N.D. Tex. July 3, 2013) (collecting cases); <u>Felder v. Countrywide Home Loans</u>, No. H-13-0282, 2013 WL 6805843, at *15, *17 (S.D. Tex. Dec. 20, 2013) (rejecting Plaintiff's arguments that securitization rendered his Deed of Trust unenforceable).

Plaintiffs' conclusory allegations suggesting that the Assignment was a forgery are insufficient to "allow[] the court to

---

[60]<u>See</u> <u>id.</u> at 8 ¶ 26, 9 ¶ 34, 59 ¶ 219, 94 ¶ 352.

[61]<u>See</u> <u>id.</u> at 60 ¶ 221, 62 ¶ 231, 27 ¶ 95.

draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.  The parties have produced a facially valid assignment signed by Robert Lyons as Assistant Secretary for MERS, solely as nominee for Homecomings.[62] The Assignment was recorded in the Official Public Records of Montgomery County, Texas, on June 22, 2012.[63]  Because "[r]eal Property records often contain transfers taking place many years in the past[,] . . . Texas 'view[s] with suspicion and distrust attempts to discredit certificates of acknowledgment,' under which the transfer is presumptively valid and contradicting evidence 'must be clear, cogent, and convincing beyond reasonable controversy.'" Morlock, L.L.C. v. JP Morgan Chase Bank, N.A., No. 12-20623, 2013 WL 2422778, at *2 (5th Cir. June 4, 2013) (quoting Ruiz v. Stewart Mineral Corp., 202 S.W.3d 242, 248 (Tex. App.—Tyler 2006, pet. denied)).  Plaintiffs assert that "[t]he Pre-Foreclosure Mortgage Assignment was drafted by a lawyer at the law firm filing the Third Foreclosure action.  On information and belief the Assignment was signed by an employee of that law firm and the signature notarized by an employee of the law firm."[64]  Plaintiffs have not explained the basis for their

---

[62]Assignment, Exhibit 3 to Defendants' 12(c) Motion, Docket Entry No. 12-1, p. 32.

[63]Id.

[64]Complaint, Docket Entry No. 1, p. 92 ¶ 336; see also id. at 7 ¶ 23.

"information and belief," nor have they explained how the signer's employment situation would invalidate the Assignment in this instance.  See Hill v. Bank of New York Mellon, No. W-12-CA-083, 2012 WL 6924545, at *6 (W.D. Tex. May 16, 2012) ("Plaintiff does not explain why being a member of a firm disqualifies [the signer] from also being a corporate representative for MERS.  There is, therefore, no basis for her claim that the assignment was invalid due to the signature . . . ."). Their conclusory allegation, devoid of further factual enhancement, is insufficient to challenge the presumptively valid mortgage assignment.  See Morlock, 2013 WL 2422778, at *2.

Plaintiffs' argument that MERS lacked authority to execute the Assignment fails as a matter of law.  The Fifth Circuit has held that MERS "qualifies as a mortgagee" under Texas law. Martins, 722 F.3d at 255.  "Courts in the Fifth Circuit have repeatedly upheld MERS' assignment of mortgages to other entities." Khan v. Wells Fargo Bank, N.A., No. H-12-1116, 2014 WL 200492, at *9 (S.D. Tex. Jan. 17, 2014).  MERS is expressly named as a beneficiary and "nominee for Lender and Lender's successors and assigns" in the Security Instrument.[65]  Therefore, Plaintiffs' argument that MERS lacked authority to execute the Assignment fails as a matter of law.

---

[65]Security Instrument, Exhibit 1 to Defendants' 12(c) Motion, Docket Entry No. 12-1, p. 3.

**B.   Plaintiffs' Standing to Challenge the Assignment**

Plaintiffs lack standing to challenge the validity of the Assignment. See Reinagel v. Deutsche Bank Nat. Trust Co., 735 F.3d 220, 228 (5th Cir. 2013). In Reinagel the plaintiff-homeowners sought declaratory and injunctive relief on the basis that the assignee of their mortgage lacked standing to foreclose. Id. at 222-25. The Fifth Circuit analyzed the effect of two mortgage assignments challenged by the plaintiff-homeowners, noting that "the first instrument assigned only the deed of trust, whereas the second instrument assigned both the deed of trust and 'the certain note(s) described therein.'" Id. at 225. The court ultimately held that the second assignment was valid against the plaintiffs and "reaffirm[ed] that under Texas law, facially valid assignments cannot be challenged for want of authority except by the defrauded assignor." Id. at 228.

Here, the facially valid Assignment, like the second instrument in Reinagel, assigns both the Security Instrument and the "note or notes therein described or referred to."[66] See id. at 225. Although Plaintiffs would have standing to "defend 'on any ground which renders the assignment void,'" their challenge based on the signer's alleged lack of authority would render the Assignment, "like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal." Id.

---

[66]Assignment, Exhibit 3 to Defendants' 12(c) Motion, Docket Entry No. 12-1.

Thus, the signer's alleged lack of authority, even accepted as true, does not furnish Plaintiffs with a basis to challenge the assignment. See id.

In addition, Plaintiffs lack standing to challenge the assignment as a violation of the terms of any applicable Pooling and Servicing Agreement ("PSA").[67]  See Reinagel, 735 F.3d at 228. Based on the foregoing, the court will presume that the June 12, 2012, Assignment is valid and that Defendants therefore had standing to foreclose.  See Morlock, 2013 WL 2422778, at *2.

## V.   Plaintiffs' Alleged Causes of Action

In their Complaint, Plaintiffs allege fifteen causes of action in addition to seeking declaratory and injunctive relief.[68]  Because Plaintiffs are proceeding pro se, the court has construed their pleadings liberally.  See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (citations omitted) (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976))).  For the reasons explained below, the court concludes that Defendants' 12(c) Motion should be granted as to all of Plaintiffs' alleged causes of action.

---

[67]Complaint, Docket Entry No. 1, p. 13 ¶ 44, p. 32 ¶¶ 115-16, p. 36 ¶¶ 131-32.

[68]Id. at 71-124.

**A.   Count I:   Violation of 18 U.S.C. § 1962(c)-(d)**

Plaintiffs allege that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").[69]   "RICO creates a civil cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962.'"   Brown v. Protective Life Ins. Co., 353 F.3d 405, 407 (5th Cir. 2003) (quoting 18 U.S.C. § 1964(c)).   "To state a civil RICO claim under any subsection in 18 U.S.C. § 1962, 'there must be:  (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'"   Jackson v. NAACP, No. 12-20399, 2013 WL 5530576, at *3 (5th Cir. Oct. 8, 2013) (quoting Brown v. Protective Life Ins. Co., 353 F.3d 405, 407 (5th Cir. 2003)).

   1.   Alleged Violations of 18 U.S.C. § 1962(c)

Plaintiffs have "alleged violations of § 1962(c),[70] which prohibits any person employed by or associated with any enterprise from participating in or conducting the affairs of that enterprise through a pattern of racketeering activity."   Id. (quoting St. Paul Mercury Ins. Co. v. Williams, 224 F.3d 425, 445 (5th Cir. 2000)) (internal quotation marks omitted).   "'A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose

---

[69]Id. at 71-78.

[70]Id. at 71-77.

a threat of continued criminal activity.'" <u>Brown</u>, 353 F.3d at 407
(quoting <u>St. Paul Mercury</u>, 224 F.3d at 441).  "The predicate acts
can be either state or federal crimes, but must be <u>criminal</u> acts."
<u>Choice v. Deutsche Bank Nat. Trust Co.</u>, No. H-13-1519, 2013
WL 4506146, at *2 (S.D. Tex. Aug. 22, 2013) (citing <u>St. Germain v.
Howard</u>, 556 F.3d 261, 263 (5th Cir. 2009)).

The predicate acts complained of by Plaintiffs are "mail or
wire fraud."[71]  <u>See</u> 18 U.S.C. §§ 1341, 1343.  "To state a claim for
mail or wire fraud to support a RICO violation under § 1341 or
§ 1343, a plaintiff must establish three elements;  '(1) a scheme
or artifice to defraud or to obtain money or property by means of
false pretenses, representations, or promises; (2) a use of the
interstate mails or wires for the purpose of executing the scheme;
and (3) a specific intent to defraud either by [d]evising,
participating in, or abetting the scheme.'" <u>Vanderbilt Mortgage &
Fin., Inc. v. Flores</u>, 746 F. Supp. 2d 819, 841 (S.D. Tex. 2010)
(quoting <u>Hewlett-Packard Co. v. Byd:Sign, Inc.</u>, 2007 WL 275476,
at *3 (E.D. Tex. Jan. 25, 2007)).

Plaintiffs identify three "predicate acts" of Defendants that
they . contend  constitute  instances  of  mail  or  wire  fraud:
(1) "[b]ringing suit on behalf of entities which were not the real
parties in interest and which had no standing to sue [through] the
use  of  the  MERS  artifice,"  (2)  [a]ctively  concealing  the

---

[71]<u>Id.</u> at 72 ¶¶ 259-61.

plaintiffs' lack of standing in their standard complaints for foreclosure," and (3) "drafting . . . fraudulent affidavits and documents and . . . filing [the] fraudulent and forged affidavits as to loan ownership."[72] As explained in § IV above, Defendants had standing to foreclose under Texas law. Evidence of that standing has been produced in the form of a facially valid Assignment, and Plaintiffs have not made any factual allegations that would impugn the validity of the Assignment beyond their conclusory allegations of forgery and lack of authority of the individual who signed the Assignment.[73] Accordingly, as explained in § IV above, the court will presume that the Assignment is valid.

Plaintiffs allege that "[a] separate count of Mail Fraud took place each and every time a fraudulent pleading, Affidavit, Promissory Note Assignment, mortgage or mortgage assignment was sent by or on behalf of a Defendant through the use of the US mail."[74] However, Plaintiffs do not provide any factual allegations that would allow the court to draw the reasonable inference that any particular pleading, affidavit, promissory note assignment, mortgage, or mortgage assignment is fraudulent. Plaintiffs'

---

[72]Id. at 73 ¶ 266.

[73]See id. at 7 ¶ 23, 43-44 ¶¶ 158-62, 58-61 ¶¶ 214-27, 61 ¶¶ 226-27, 91 ¶ 332, 92 ¶ 336, 118-19 ¶¶ 455-59.

[74]Id. at 72 ¶ 260. Plaintiffs also allege that "[b]y sending the fraudulent affidavits, assignments and pleadings to the clerks of court, judges, attorneys, and defendants in foreclosure cases[, t]hese Defendants intentionally participated in a scheme to defraud others, including the Plaintiffs." Id. ¶ 261.

conclusory allegations are not sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.

Plaintiffs also make several allegations concerning the role of MERS in recording and assigning mortgages.[75] The court has already concluded in § III above that any claims based on the role of MERS in the initial lending transaction between Plaintiffs and Homecomings are barred in this court by the doctrine of res judicata. In addition, the court has already concluded in § IV above that the Assignment is valid, that MERS had authority to execute the Assignment, and that Plaintiffs lack standing to challenge the Assignment.

All of Plaintiffs' other factual allegations relate to unidentified mortgages involving unknown individuals who are not parties to this litigation.[76] Plaintiffs have not explained how they were injured by these putative predicate acts. <u>See Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 105 S. Ct. 3275, 3285 (1985) ("Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses. . . . [T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct

---

[75] <u>Id.</u> at 75-76 ¶¶ 276-77.

[76] <u>See id.</u> at 39-70, 71-75 ¶¶ 260-72.

constituting the violation."). Plaintiffs do not allege that they have made their payments in accordance with the Note.[77] In light of the court's conclusions in § IV above, Plaintiffs' allegations are insufficient to state a claim for a RICO violation under 18 U.S.C. § 1962(c).

   2.   Alleged Violations of 18 U.S.C. § 1962(d)

   In order to show a RICO conspiracy under Section 1962(d), a plaintiff must show '(1) that two or more people agreed to commit a substantive RICO offense and (2) that [the defendant] knew of and agreed to the overall objective of the RICO offense.'" BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC, 901 F. Supp. 2d 884, 920 (S.D. Tex. 2012) (quoting Chaney v. Dreyfus Serv. Corp., 595 F.3d 219, 239 (5th Cir. 2010)). "In other words, there must be evidence that a conspirator knew of the conspiracy and acted in furtherance thereof." Id. (citing Salinas v. United States, 118 S. Ct. 469, 477-78 (1997)).

   Plaintiffs allege that "Defendants conspired together to violate 18 U.S.C. § 1962[d]" by "agree[ing] upon the same criminal

--------

[77]Plaintiffs allege that "Defendant seeks to enforce loan documents for which it has already been paid in full." Complaint, Docket Entry No. 1, p. 15 ¶ 49; see also id. at 60 ¶ 222, 76 ¶ 280, 114 ¶ 440. Plaintiffs appear to argue that their Note was extinguished by one or all of the following: (1) derivative contracts and credit default swaps allegedly entered into by the Lender, (2) Government bailout subsidies provided to mortgage lenders, or (3) insurance purchased by the securitized trust. See id. at 15 ¶ 48, 37-38 ¶ 138, 46-47 ¶¶ 173-75, 62-63 ¶ 231, 85 ¶ 311, 113 ¶ 434. However, Plaintiffs provide no authority, and the court is not aware of any, to suggest that any of these items would extinguish Plaintiffs' obligations under the Note.

objective to wit:  the theft of real property through illegal foreclosures."[78]  The court has already concluded in § IV above that Defendants had standing to foreclose.  Although Plaintiffs have provided a lengthy factual background of the MERS system to support their claims, all of their factual allegations relate to unidentified mortgages involving unknown individuals who are not parties to this litigation.[79]  Plaintiffs' allegations are also not specific enough to allow the court to draw the reasonable inference that any particular act of Defendants is fraudulent, and thus fail to meet the requirements of Rule 9(b).  See Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998).  Plaintiffs have cited no authority, and the court is not aware of any, to suggest that the MERS system constitutes a criminal conspiracy to steal real property through illegal foreclosures.  Indeed, Texas law specifically allows for MERS to conduct foreclosures as a mortgagee.  See Farkas v. GMAC Mortgage, L.L.C., 737 F.3d 338, 342 (5th Cir. 2013) ("Our holding in Martins permits MERS and its assigns to bring foreclosure actions under the Texas Property Code." (citing Martins, 722 F.3d at 255)).  Plaintiffs' conclusory allegations that Defendants "typically" engage in fraudulent conduct, without any factual enhancement beyond their

---

[78]Complaint, Docket Entry No. 1, p. 77 ¶ 283.

[79]See id. at 39-70.

-28-

unsupported allegations of a broad conspiracy to defraud the public,[80] are insufficient to state a claim under § 1962(d).

## B.   Count II:  Conspiracy

Plaintiffs allege that Defendants conspired to "fil[e] foreclosure[s] under false pretenses" and to file "fraudulent and forged Mortgage Assignment[s]."[81]  "Under Texas law, the elements of a claim for civil conspiracy are:  (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful overt acts; and (5) damages as a proximate result of the conduct."  Dallas Cnty., Tex. v. MERSCORP, Inc., No. 3:11-CV-2733-O, 2013 WL 5903300, at *10 (N.D. Tex. Nov. 4, 2013) (citing Murray v. Earle, 405 F.3d 279, 293 (5th Cir. 2005).  "Civil conspiracy is a 'derivative tort' contingent on defendant's participation in some underlying tort."  Id. (citing Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996)).  "To succeed on a conspiracy claim, a plaintiff must prove either 'that the defendants conspired to accomplish an unlawful purpose or used unlawful means to accomplish a lawful purpose.'"  BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC, 901 F. Supp. 2d 884, 917 (S.D. Tex. 2012) (citing Murray, 405 F.3d at 293).

It appears that the bulk of plaintiffs' factual allegations with regard to their conspiracy claim involve either the original

---

[80]See generally id. at 51–71.

[81]Id. at 78 ¶ 290; see also id. at 88 ¶ 322.

lending transaction or subsequent assignment of their mortgage.[82]
As noted in § III above, any claims related to the original lending
transaction are barred by the doctrine of res judicata.  As noted
in § IV above, the court has concluded that the June 12, 2012,
Assignment is valid.  All other factual allegations in Plaintiffs'
Complaint are vague and conclusory allegations of supposed "dark
influences" affecting parties and transactions that are neither
identified nor involved in this litigation.[83]  Such allegations are
insufficient to "allow[] the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."  Iqbal,
129 S. Ct. at 1949.

Furthermore, because the court concludes that Plaintiffs have
failed to state a plausible cause of action against Defendants
based on any other theory of recovery advanced in their Complaint,
Plaintiffs' claims for conspiracy must fail as a matter of law.
See Dallas Cnty., 2013 WL 590330, at *10 ("As no underlying claim
remains upon which to base this derivative tort, the Court enters
judgment as a matter of law in favor of Defendants as to
Plaintiff's civil conspiracy claim."); Huml v. Mortgage Electronic
Registration Sys., Inc., No. EP-12-CV-00146-DCG, 2012 WL 5984821,
at *6 (W.D. Tex. Oct. 25, 2012) ("[T]he conduct alleged in the
complaint involve failing to record subsequent transfers of

---

[82]See id. at 78-89.

[83]Id. at 80 ¶ 296.

-30-

interest in real property, designating MERS as beneficiary in the deeds of trust, and using 'robosigned' documents to facilitate foreclosures. These allegations of misconduct form the basis of Plaintiffs' claims for fraudulent misrepresentation and unjust enrichment, which as have been seen do not state a valid claim upon which relief can be granted. Accordingly, Plaintiffs' conspiracy claim must also fail, because 'conspiracy is not a stand-alone claim, it depends on participation in some underlying tort.'" (quoting <u>Berry v. Indianapolis Life Ins. Co.</u>, 600 F. Supp. 2d 805, 814 (N.D. Tex. 2009))).

## C.  Count III:  Common Law Fraud and Injurious Falsehood

### 1.  <u>Fraud</u>

To prevail on a fraud claim under Texas law a plaintiff must prove that (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; (4) the plaintiff actually and justifiably relied upon the representation; and (5) the plaintiff thereby suffered an injury. <u>Ernst & Young, L.L.P. v. Pacific Mut. Life. Ins. Co.</u>, 51 S.W.2d 573, 577 (Tex. 2001). Plaintiffs appear to base their fraud claim on their allegation that Defendants "forged and publicly filed 'false' mortgage assignments."[84] The

---

[84]<u>Id.</u> at 90 ¶ 330.

court has already concluded in § IV above that the June 12, 2012, Assignment is presumptively valid and that Plaintiffs have failed to impugn its validity. With regard to Plaintiffs' factual allegations concerning "property owners and Judges across Texas," such allegations fail to meet the heightened pleading requirements of Rule 9(b) and are insufficient to allow the court to draw the reasonable inference that Defendants are liable for the misconduct alleged.[85] See Martinez-Bey v. Bank of Am., N.A., No. 3:12-CV-4986-G, 2013 WL 3054000, at *10 (N.D. Tex. June 18, 2013) ("Plaintiff argues, in essence, that Defendants misrepresented [the Bank's] authority to foreclose on the Property by falsely representing that it was the holder in due course of the note and had title to the Property. Although he lays out the 'what,' he does not state the 'when, where, or how' of his claim." (citing Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003)). Accordingly, Plaintiffs' fraud claims will be dismissed.

### 2.   Injurious Falsehood

In Texas the tort of "injurious falsehood" is known by the name "business disparagement." See Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 766 (Tex. 1987) (noting that "[t]he Restatement identifies the tort [of business disparagement] by the name 'injurious falsehood'" (citing Restatement (Second) of Torts

---

[85] Id.

-32-

§ 623A, comment a (1977))); <u>see also</u> <u>Graham Land & Cattle Co. v.</u>
<u>Indep. Bankers Bank</u>, 205 S.W.3d 21, 30 (Tex. App.—Corpus Christi
2006, no pet.) ("The Texas Supreme Court has relied on the
Restatement (Second) of Torts to explain and develop the common law
cause of action for business disparagement, a claim known outside
Texas as 'injurious falsehood.'" (citing <u>Forbes Inc. v. Granada</u>
<u>Biosciences, Inc.</u>, 124 S.W.3d 167, 170 (Tex. 2003))). "A claim for
business slander or disparagement is appropriate when a plaintiff
alleges interference with commercial or economic relations."
<u>Newsom v. Brod</u>, 89 S.W.3d 732, 734–35 (Tex. App.–Houston [1st
Dist.] 2002, no pet.) (citing <u>Hurlbut</u>, 749 S.W.2d at 766).

"The general elements of a claim for business disparagement
are publication by the defendant of the disparaging words, falsity,
malice, lack of privilege, and special damages." <u>Prudential Ins.</u>
<u>Co. of Am. v. Fin. Review Servs., Inc.</u>, 29 S.W.3d 74, 82 (Tex.
2000). "An action for injurious falsehood or business disparage-
ment is similar in many respects to an action for defamation."
<u>Newsom</u>, 89 S.W.3d at 735 (citing <u>Hurlbut</u>, 749 S.W.2d at 767).
However, "[m]ore stringent requirements have always been imposed on
the 'plaintiff seeking to recover for injurious falsehood in three
important respects -- falsity of the statement, fault of the
defendant and proof of damage.'" <u>Hurlbut</u>, 749 S.W.2d at 766
(quoting Restatement (Second) of Torts § 623A, comment g (1977)).

With regard to the damages element, "pecuniary loss to the
plaintiff must always be proved to establish a cause of action for

business disparagement." <u>Id.</u> at 766.  "Pecuniary loss refers to loss that has been realized or liquidated, as in the case of specific loss of sales." <u>Newsom</u>, 89 S.W.3d at 735; <u>see also Hurlbut</u>, 749 S.W.2d at 767.  "Furthermore, the communication must play a substantial part in inducing others not to deal with the plaintiff with the result that special damage, in the form of the loss of trade or other dealings, is established." <u>Hurlbut</u>, 749 S.W.2d at 767.

Plaintiffs have not alleged any lost sales or other dealings as a result of any statements allegedly published by Defendants.[86] <u>Cf.</u> <u>Allied Capital Corp. v. Cravens</u>, 67 S.W.3d 486, 488-89, 492-93 (Tex. App.—Corpus Christi 2002, no pet.) (concluding that plaintiffs had stated a claim for business disparagement when advertisement of a foreclosure sale of their property caused a breakdown in negotiations with potential buyers and lessees). Therefore, Plaintiffs have failed to plead an essential element of their cause of action, and dismissal is proper. <u>See</u> <u>Stockstill</u>, 561 F.3d at 384.

Moreover, Plaintiffs' claims for injurious falsehood appear to be based entirely on their contention that "[t]he Mortgage Assignments were published false statements" and that "Defendants knew the foreclosures and declaratory judgments were filed with false statements as to the Defendants' standing to file suit and

---

[86]<u>See</u> <u>id.</u> at 90-91.

status as Mortgagee."[87] As explained in § IV above, the Assignment is valid and Defendants have standing to foreclose. Thus, Plaintiffs' claims have no merit.

**D. Count IV: Slander/Defamation of Title and Quiet Title**

    1. <u>Slander of Title</u>

A slander of title action in Texas requires: (1) the uttering and publishing of disparaging words, (2) falsity, (3) malice, (4) special damages, (5) possession of an estate or interest in the property disparaged, and (6) the loss of a specific sale. <u>Williams v. Jennings</u>, 755 S.W.2d 874, 879 (Tex. App.—Houston 1988, writ ref'd). Plaintiffs allege that "MERS was illegally and fraudulently listed in the public record as a Mortgagee."[88] However, as explained in § IV above, MERS "qualifies as a mortgagee" under Texas law. <u>Martins</u>, 722 F.3d at 255. Plaintiffs also challenge the validity of the June 12, 2012, Assignment recorded in the Official Public Records of Montgomery County, Texas.[89] The court has already concluded that the Assignment is valid. Therefore, Plaintiffs' claims for slander of title have no merit.

Furthermore, Plaintiffs have not alleged the loss of a specific sale. Accordingly, Plaintiffs' claims for slander of title are subject to dismissal because "the complaint lacks an

---

[87] <u>Id.</u> at 91 ¶ 332.

[88] <u>Id.</u> at 92 ¶ 336.

[89] <u>Id.</u>

-35-

allegation regarding a required element necessary to obtain relief." <u>Stockstill</u>, 561 F.3d 377.

    2.  <u>Quiet Title</u>

A suit to quiet title under Texas law requires a plaintiff to prove: (1) a valid equitable interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) although facially valid, defendant's claim is invalid or unenforceable. <u>Bryant v. Bank of America, N.A.</u>, No. 4:11-CV-448, 2012 WL 2681361, at *16 (E.D. Tex. June 6, 2012) (citing <u>Sadler v. Duvall</u>, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, pet. denied)). A plaintiff in a suit to quiet title "must prove and recover on the strength of his own title, not the weakness of his adversary's title." <u>Fricks v. Hancock</u>, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.). "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." <u>Gordon v. West Houston Trees, Ltd.</u>, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Plaintiffs' claims for quiet title appear to be based entirely on the enforceability of the Security Instrument and Assignment.[90] The court has already concluded in § III above that any challenge to the validity of the Security Instrument is barred in this court by the doctrine of res judicata. In addition, the court has already concluded in § IV above that the Assignment is valid.

_____

[90]<u>Id.</u> at 94-95 ¶¶ 347-54.

Accordingly, Plaintiffs' quiet-title claims must fail as a matter of law.

**E.   Count V:  Fraud by Misrepresentation**

In Texas the elements of fraud by misrepresentation are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. <u>Martinez-Bey</u>, 2013 WL 3054000, at *10 (citing <u>Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter</u>, 607 F.3d 1029, 1032-33 (5th Cir. 2010)).  Plaintiffs allege "[t]he deceptive acts of the original Lender(s) and MERS as to the inducement of the borrower to enter the transaction and as to a multitude of misrepresentations in the execution of such" as the basis for their claims for fraud by misrepresentation.[91]  These allegations appear to involve the events and circumstances surrounding the initial lending transaction.  Accordingly, as explained in § III above, they are res judicata in this court. Furthermore, Plaintiffs' allegations fail to meet the heightened pleading requirements of Rule 9(b).  <u>See</u> <u>id.</u>  Therefore,

---

[91]<u>Id.</u> at 95 ¶ 356.

Plaintiffs' claims for fraud by misrepresentation are subject to dismissal.

**F.   Count VI:   Fraud by Omission and Inducement**

"When the plaintiff alleges fraud by omission, '[c]ourts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose.'" Hines v. Wells Fargo Bank, N.A., No. H-13-00167, 2013 WL 5786473, at *6 (S.D. Tex. Oct. 28, 2013) (quoting United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co., 414 F.3d 558, 567 (5th Cir. 2005)). "A defendant's failure to disclose information will support a claim for fraud only where the defendant has a duty to disclose." Shandong, 607 F.3d at 1035 (citing Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001)). "A duty to disclose arises between parties in a confidential or fiduciary relationship or between non-fiduciaries when 'one party learns later that his previous affirmative statement was false or misleading.'" Hines, 2013 WL 5786473, at *6 (quoting Union Pac. Resources Grp., Inc. v. Rhone-Poulenc, Inc., 247 F.3d 574, 586 (5th Cir. 2001)).

Plaintiffs have not alleged a confidential or fiduciary relationship with Defendants, nor have they identified with the

particularity required by Rule 9(b) any affirmative statement later discovered to be false or misleading.  Instead, Plaintiffs allege that "[t]he Lender conspired to fraudulently conceal the 'True Lender' at closing, and the Note may have been securitized and converted into an investment vehicle within a Special Purpose Vehicle."[92]  Plaintiffs contend that the alleged failure to disclose the securitization of their Note "induced the Plaintiffs to enter into a loan with unknown and unrevealed entities."[93]  Such allegations appear to involve the events and circumstances surrounding the initial lending transaction.  Accordingly, as explained in § III above, they are res judicata in this court. Plaintiffs' claims for fraud by omission and inducement are therefore subject to dismissal.

## G.    Count VII:  Conspiracy to Commit Fraud by the Creation, Operation, and Use of MERS System

"To establish a civil conspiracy to commit fraud, the plaintiff must establish (1) a combination of two or more persons; (2) seeking to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) having a meeting of minds on the object or course of action; (4) who commit one or more unlawful, overt acts; (5) proximately resulting in damages.  _Townsend v. Barrett Daffin Frappier Turner & Engel, LLP_, No. 09-12-00564-CV, 2013 WL 5874607,

---

[92]_Id._ at 96 ¶ 358.

[93]_Id._

at *4 (Tex. App.—Beaumont Oct. 31, 2013, pet. filed) (citing <u>Ins.</u>
<u>Co. of N. Am. v. Morris</u>, 981 S.W.2d 667, 675 (Tex. 1998)).
Plaintiffs make several allegations regarding the role of MERS in
originating, recording, securitizing, and foreclosing on mortgages
that they contend support a claim for conspiracy to commit fraud.[94]
Plaintiffs' arguments involve allegations involving the split-the-
note theory, the pooling of mortgages in securitized trusts, and
the alleged lack of standing of MERS-related entities to initiate
foreclosure proceedings.[95]

As explained in § III above, to the extent that Plaintiffs'
claims rely on the events and circumstances surrounding the initial
lending transaction, they are barred by the doctrine of res
judicata.  Furthermore, the court has already addressed Plaintiffs'
arguments as they pertain to the validity of the June 12, 2012,
Assignment and concluded that the Assignment is valid.
Accordingly, to the extent that Plaintiffs' claims depend upon
challenging the Assignment, they have no merit.

In addition, Plaintiffs have not explained how use of the MERS
system caused them any damages.  Plaintiffs allege that they "have
suffered injuries which include mental anguish, emotional distress,
embarrassment, humiliation, loss of reputation and a decreased
credit rating."[96]  However, Plaintiffs do not explain how any of

---

[94]<u>Id.</u> at 96-109 ¶¶ 360-410.

[95]<u>See id.</u>

[96]<u>Id.</u> at 109 ¶ 411.

-40-

these damages were proximately caused by Defendants' use of the MERS system. Plaintiffs do not allege that they have paid their Note. Instead, they challenge Defendants' standing to foreclose and argue that they are not obligated to repay the Note because of the securitization of their loan and the government's bailout of the mortgage industry.[97] Such allegations fail to support an inference that "the creation, operation, and use of MERS" proximately caused Plaintiffs any damages. Accordingly, Plaintiffs have failed to state a claim for conspiracy to commit fraud.

**H.   Count VIII:   Conspiracy to Commit Wrongful Foreclosure by the Creation, Operation, and Use of the MERS System**

Plaintiffs allege that Defendants "did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate and actively engage in and benefit from wrongful foreclosures perpetrated on Plaintiffs."[98] "Civil conspiracy is a 'derivative tort' contingent on defendant's participation in some underlying tort." Dallas Cnty., 2013 WL 5903300, at *10 (citing Tilton, 925 S.W.2d at 681 (Tex. 1996)). Here, Plaintiffs allege that the underlying tort is wrongful foreclosure.[99] "In Texas, to prevail on a wrongful foreclosure claim a plaintiff must establish: '(1) a defect in the foreclosure

---

[97]See id. at 15 ¶ 48, 37–38 ¶ 138, 46–47 ¶¶ 173–75, 62–63 ¶ 231, 85 ¶ 311, 113 ¶ 434.

[98]Id. at 109–10 ¶ 414.

[99]Id. at 110 ¶ 415.

sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price.'" Colbert v. Fed. Nat. Mortgage Ass'n, No. H-12-2827, 2013 WL 505343, at *4 (S.D. Tex. Feb. 8, 2013) (quoting Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).

Plaintiffs have not made any factual allegations concerning defects in any foreclosure sale proceedings. See id. Instead, Plaintiffs argue that Defendants conspired to initiate foreclosure proceedings without standing to do so.[100]  The court has already concluded in § IV above that Defendants have standing to foreclose. Accordingly, Plaintiffs' claim that "use of the MERS artifice" allowed Defendants to "[b]ring[] suit on behalf of entities [that] were not the real parties in interest, and [that] had no standing to sue" has no merit.[101]  Without any factual allegations sufficient to give rise to an inference that a foreclosure would be wrongful, Plaintiffs' claim that Defendants conspired to commit wrongful foreclosure must fail as a matter of law. See Dallas Cnty., 2013 WL 590330, at *10; Huml, 2012 WL 5984821, at *6.

## I.   Count IX:  Unjust Enrichment

Plaintiffs allege that "Defendants' deceptive scheme . . . will unjustly enrich Defendants . . . to the detriment of

---

[100]Id. at 111-13 ¶¶ 420-34.

[101]Id. at 112 ¶ 428; see also id. at 113 ¶ 433.

Plaintiffs[] by causing Defendants . . . to receive monetary payments from the mortgage payments[] and/or the sale of Plaintiffs' properties through illegal foreclosures."[102]  "With respect to unjust enrichment[,] Texas law is clear that such a claim is unavailable where a contract addresses the disputed matter, as is the case with the foreclosure process at issue here."[103]  Frazier v. Wells Fargo Bank, N.A., No. 13-40316, 2013 WL 5513987, at *2 (5th Cir. Oct. 7, 2013) (citing Miga v. Jensen, 299 S.W.3d 98, 102 (Tex. 2009)); see also Baxter, 2013 WL 5356894, at *2 ("There can be no recovery based on [restitution or unjust enrichment] when the same subject matter is covered by an express

---

[102]Id. at 115 ¶ 443.

[103]The court notes that several Texas courts of appeals have held that unjust enrichment is not an independent cause of action under Texas law.  See Richardson Hosp. Auth. v. Duru, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.) ("This Court has held that unjust enrichment is not an independent cause of action."); Foley v. Daniel, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.) ("Unjust enrichment[] is not an independent cause of action . . . ."); Casstevens v. Smith, 269 S.W.3d 222, 229 (Tex. App.—Texarkana 2008, pet. denied) ("Unjust enrichment, itself, is not an independent cause of action . . . ."); Mowbray v. Avery, 76 S.W.3d 663, 679-80 (Tex. App.—Corpus Christi 2002, pet. denied) ("[U]njust enrichment is not a distinct independent cause of action but simply a theory of recovery."); LaChance v. Hollenbeck, 695 S.W.2d 618, 620 (Tex. App.—Austin 1985, writ ref'd n.r.e.) ("Unjust enrichment . . . does not provide an independent basis for a cause of action."); see also Baxter v. PNC Bank Nat. Ass'n, No. 12-51181, 2013 WL 5356894, at *3 n.2 (5th Cir. Sept. 26, 2013) ("Texas courts have not recognized a claim for unjust enrichment as an independent cause of action, but have recognized that a lawsuit for restitution or a lawsuit seeking the imposition of a constructive trust may be raised on the theory of unjust enrichment." (citing Mowbray, 76 S.W.3d at 679-80)).  But see Pepi Corp. v. Galliford, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist. 2007, pet. denied) ("Unjust enrichment is an independent cause of action.")).

contract."); <u>Katz v. JP Morgan Chase Bank Nat. Ass'n</u>, No. H-13-2934, 2013 WL 6709178, at *3 (S.D. Tex. Dec. 18, 2013) ("Here, [Plaintiff's] mortgage is covered by the Deed of Trust, which is a contract between [Plaintiff] (the mortgagor) and [Defendant] (the mortgagee by assignment). . . . Thus, [Plaintiff] fails to state a claim upon which relief can be granted as to his unjust enrichment claim."); <u>Casstevens</u>, 269 S.W.3d at 229 ("The doctrine [of unjust enrichment] applies the principles of restitution to disputes where there is no actual contract, based on the equitable principle that one who receives benefits that would be unjust for him or her to retain ought to make restitution."). Because the Note and Security Instrument govern the rights and obligations of the parties, including issues related to payment and foreclosure, Plaintiffs cannot maintain a cause of action against Defendants for unjust enrichment.

**J. Count X: Forgery**

Plaintiffs allege that Defendants forged the June 12, 2012, Assignment.[104] The factual basis for their claim is their assertion that "[t]he forgery on the Assignment was an 'Unauthorized Signature' under Texas's Uniform Commercial Code, meaning 'a signature without actual, implied, or apparent authority.'"[105] As

---

[104]Complaint, Docket Entry No. 1, p. 118 ¶¶ 455, 457–58; <u>see also id.</u> at 117 ¶ 452.

[105]<u>Id.</u> at 118 ¶ 455.

explained in § IV above, Plaintiffs lack standing to challenge the validity of the Assignment on the basis of an unauthorized signature.   In addition, the court has already considered Plaintiffs' arguments regarding the allegedly forged Assignment and concluded that Plaintiffs have failed to plead facts "convincing beyond reasonable controversy" to suggest that the June 12, 2012, Assignment was a forgery.  <u>Morlock</u>, 2013 WL 2422778, at *2.

Although Plaintiffs have not cited any authority, they appear to recite the elements of forgery under a criminal statute to argue that Defendants are "guilty of forgery."[106]   <u>See</u> N.Y. Penal Law § 170.10 (McKinney); Tex. Penal Code Ann. § 32.21 (West).  However, "[i]n order for a private right of action to exist under a criminal statute, there must be 'a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" <u>Prindle v. Lewis</u>, No. 3:10-CV-1217-B-BK, 2010 WL 4628077, at *2 (N.D. Tex. Oct. 8, 2010) (quoting <u>Cort v. Ash</u>, 95 S. Ct. 2080, 2088 (1975)).   Plaintiffs have not provided any statutory basis for inferring that they are entitled to bring a private cause of action on the basis of any criminal statute.   Thus, any attempt by Plaintiffs to assert a cause of action under a criminal statute fails as a matter of law.  <u>See</u> <u>Mathis v. DCR Mortgage III Sub, I, LLC</u>, No. A-13-CA-192-SS, 2013 WL 3389452, at *5 (W.D. Tex. July 8, 2013) ("[Plaintiff's] Amended Complaint labels forgery, in

---

[106]<u>Id.</u> at 117 ¶ 454.

-45-

violation of the Texas Penal Code, as its third cause of action. Of course, 'the Texas Penal Code does not create a private cause of action.'" (quoting <u>Hamilton v. Pechacek</u>, 319 S.W.3d 801, 813 (Tex. App.—Fort Worth 2010, no pet.))).

### K.  Count XI:  Laches

Plaintiffs allege that "Defendants through their dilatory tactics have failed to timely prosecute a foreclosure action. . . . As a result of these [delays] Defendants are barred from now prosecuting any attempt to foreclose."[107]  "To prevail, the party asserting laches must show two elements:  (1) there was an unreasonable delay by the other party in asserting legal or equitable rights, and (2) the party asserting laches made a good faith change in position to his detriment because of the delay." <u>Brewer v. Nationsbank of Texas, N.A.</u>, 28 S.W.3d 801, 804 (Tex. App.—Corpus Christi 2000, no pet.); <u>see also</u> <u>City of Fort Worth v. Johnson</u>, 388 S.W.2d 400, 403 (Tex. 1964).  Plaintiffs have pleaded no facts indicating that they made a change in position to their detriment because of any delay by Defendants in prosecuting a foreclosure action.  Accordingly, dismissal is proper because "the complaint lacks an allegation regarding a required element necessary to obtain relief."  <u>Stockstill</u>, 561 F.3d at 384.

Furthermore, under Texas law "laches is a defense and not a cause of action."  <u>Prappas v. Meyerland Cmty. Imp. Ass'n</u>, 795

---

[107]<u>Id.</u> at 119 ¶¶ 461–62.

S.W.2d 794, 800 (Tex. App.—Houston [14th Dist.] 1990, writ denied); see also Tex. R. Civ. P. 94. The appropriate juncture for raising a laches claim would have been in the state foreclosure proceeding. See Prappas, 795 S.W.2d at 800 ("The appropriate juncture for raising a laches claim . . . would have been at the time [the related action was filed.] . . . But it turns laches on its head to transform the doctrine into a basis for bringing this derivative lawsuit.").

## L.   Count XII:   Action Under the Federal Truth in Lending Act ("TILA")

Plaintiffs' allegations with regard to Count XII appear to be copied directly from their pleadings in the prior state-court lawsuit.[108]   As explained in § III above, to the extent that Plaintiffs' claims are based on the events and circumstances surrounding the initial lending transaction, such claims are barred by the doctrine of res judicata. Because Plaintiffs do not plead any facts that are not related to the initial lending transaction with regard to any alleged TILA violations, Count XII is barred by res judicata in its entirety.[109]

Furthermore, it is apparent from the face of the Complaint that Plaintiffs' TILA cause of action is barred by the statute of

---

[108]Compare Complaint, Docket Entry No. 1, pp. 119-21 ¶¶ 464-72, with Plaintiffs' First Amended Petition/Complaint, Exhibit 22 to Defendants' 12(c) Motion, Docket Entry No. 12-3, pp. 8-10 ¶¶ 21-29.

[109]Plaintiffs allege various deficiencies with regard to the timing and content of the disclosure statement in connection with the closing of the initial loan transaction. Complaint, Docket Entry No. 1, pp. 120-21 ¶ 467.

limitations.  See Kansa, 20 F.3d at 1366; Clark, 794 F.2d at 970;
Kaiser Aluminum, 677 F.2d at 1050.   "The general statute of
limitations for damages claims under the TILA is one year after the
violation."   Williams v. Countrywide Home Loans, Inc., 504
F. Supp. 2d 176, 186 (S.D. Tex. 2007) (citing 15 U.S.C. § 1640(e)),
aff'd, 269 F. App'x 523 (5th Cir. 2008).   "'The violation "occurs"
when the transaction is consummated.   Nondisclosure is not a
continuing violation for purposes of the statute of limitations.'"
Moor v. Travelers Ins. Co., 784 F.2d 632, 633 (5th Cir. 1986)
(quoting In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984)).   "The
credit transaction is consummated when 'a contractual relationship
is created between [a creditor and consumer].'"   Williams, 504
F. Supp. at 186 (quoting Bourgeois v. Haynes Construction Co., 728
F.2d 719, 720 (5th Cir. 1984)).   Here, the credit transaction was
consummated on February 21, 2006.[110]   This suit was brought on
May 14, 2013, more than seven years later.[111]   Therefore,
Plaintiffs' TILA claims are barred by the applicable one-year
statute of limitations.

**M.   Count XIII:   Infliction of Emotional Distress**

Plaintiffs' allegations with regard to Count XIII appear to be
copied directly from their pleadings in the prior state-court

---

[110]Note, Exhibit 2 to Defendants' 12(c) Motion, Docket Entry
No. 12-1, p. 1; Security Instrument, Exhibit 1 to Defendants' 12(c)
Motion, Docket Entry No. 12-1, p. 1.

[111]Complaint, Docket Entry No. 1.

lawsuit.[112]   As explained in § III above, to the extent that Plaintiffs' claims are based on the events and circumstances surrounding the initial lending transaction, such claims are barred by the doctrine of res judicata.

Plaintiffs do not point to any specific factual allegations to support their claim that "Defendants['] conduct with regard to Plaintiffs constitutes the tort of outrage" or "[i]n the alternative . . . the tort of intentional infliction of emotional distress and/or reckless disregard for the infliction of emotional distress."[113]  Instead, Plaintiffs argue that "all of the conduct of the Defendants" gives rise to the tort causes of action alleged.[114]

"To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional

---

[112]Compare Complaint, Docket Entry No. 1, p. 122 ¶¶ 474-75, with Plaintiffs' First Amended Petition/Complaint, Exhibit 22 to Defendants' 12(c) Motion, Docket Entry No. 12-3, p. 10 ¶¶ 30-31.

[113]Complaint, Docket Entry No. 1, p. 122 ¶¶ 474-75.  Though Plaintiffs couch their claims in the alternative, they have cited no authority, and the court is aware of none, to suggest that Texas courts recognize a separate cause of action for "outrage" that is distinct from a cause of action for intentional infliction of emotional distress.  See Black's Law Dictionary 814 (7th ed. 1999) (defining "intentional infliction of emotional distress" and noting that the tort is "[a]lso termed (in some states) outrage").  Accordingly, the court construes Plaintiffs' allegations solely as a claim for intentional infliction of emotional distress.

[114]Complaint, Docket Entry No. 1, p. 122 ¶¶ 474-75.

-49-

distress was severe." <u>Hoffmann-La Roche Inc. v. Zeltwanger</u>, 144 S.W.3d 438, 445 (Tex. 2004) (citing <u>Standard Fruit & Vegetable Co. v. Johnson</u>, 985 S.W.2d 62, 65 (Tex. 1998)).   "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Id.</u> (quoting <u>Twyman v. Twyman</u>, 855 S.W.2d 619, 621 (Tex. 1993)).   Furthermore, "[i]t is for the court to determine, in the first instance, whether a defendant's conduct was extreme and outrageous." <u>Id.</u>   "But when reasonable minds may differ, it is for the jury, subject to the court's control, to determine whether, in the particular case, the conduct was sufficiently extreme and outrageous to result in liability." <u>Id.</u>

A review of Plaintiffs' Complaint reveals no factual allegations about which reasonable minds could differ in determining whether Defendants' conduct was extreme or outrageous. Furthermore, Plaintiffs have pleaded no facts indicating that they suffered severe emotional distress. Accordingly, Plaintiffs have failed to plead a plausible cause of action for intentional infliction of emotional distress under Texas law.

**N.   Count XIV:  Breach of Fiduciary Duty or Quasi-Fiduciary Duty**

Plaintiffs' allegations with regard to Count XIV appear to be copied verbatim from their pleadings in the prior state-court

lawsuit.[115]   Plaintiffs allege that Defendants "had and have an ongoing duty to report truthful information on documents that they recorded in the records of Montgomery County, Texas and to act in conformity with the laws of the State of Texas and federal laws relating to mortgage servicing, and they did not do so."[116]   As explained in § III above, to the extent that Plaintiffs' claims are based on the events and circumstances surrounding the initial lending transaction, such claims are barred by the doctrine of res judicata.[117]   The court has already concluded in § IV above that the Assignment is facially valid and that MERS had authority to execute it.   Accordingly, Plaintiffs' conclusory allegations that Defendants did not "report truthful information on documents that they recorded in the records of Montgomery County, Texas" or "act in conformity with the laws of the State of Texas and federal laws relating to mortgage servicing" have no merit.[118]   Furthermore,

---

[115]Compare Complaint, Docket Entry No. 1, p. 122 ¶ 477, with Plaintiffs' First Amended Petition/Complaint, Exhibit 22 to Defendants' 12(c) Motion, Docket Entry No. 12-3, p. 11 ¶ 32.

[116]Complaint, Docket Entry No. 1, p. 122 ¶ 477.

[117]The court construes Plaintiffs' allegations regarding Defendants' alleged duty to provide "Plaintiffs with fair and honest disclosure of all facts that might be presumed to influence them with regard to its actions, including those facts favorable to a creditor and adverse to Plaintiffs' interest as it relates to the Security Agreement" to be based entirely on the events giving rise to the initial loan transaction and foreclosure that was the subject of the state-court lawsuit.   See Complaint, Docket Entry No. 1, p. 122 ¶ 477.   Accordingly, Plaintiffs' claims based on these facts are barred by the doctrine of res judicata.

[118]Complaint, Docket Entry No. 1, p. 122 ¶ 477.

Plaintiffs have not alleged the existence of a fiduciary duty between themselves and Defendants, nor have they specified what duty was breached. See Williams, 504 F. Supp. at 192-93. Thus, Plaintiffs' "complaint lacks an allegation regarding a required element necessary to obtain relief." Stockstill, 561 F.3d at 384.

**O.   Count XV:  Violations of the Real Estate Settlement Procedures Act ("RESPA")**

Plaintiffs' allegations with regard to Count XV appear to be copied directly from their pleadings in the prior state-court lawsuit.[119] As noted in § III above, to the extent that Plaintiffs' claims are based on the events and circumstances surrounding the initial lending transaction, such claims are barred by the doctrine of res judicata.[120]

---

[119]Compare Complaint, Docket Entry No. 1, p. 123 ¶¶ 479-81, with Plaintiffs' First Amended Complaint, Exhibit 22 to Defendants' 12(c) Motion, Docket Entry No. 12-3, pp. 11-12 ¶¶ 33-35.  As noted by Defendants, Plaintiffs' allegations are directed at "Defendants Homecomings, MERS and GMAC" and references an assignment to "RFC." Defendants' 12(c) Motion, Docket Entry No. 12, p. 17; Complaint, Docket Entry No. 1, p. 123 ¶¶ 479-81.  Of the parties named by Plaintiffs, only MERS is a party in the current action.

[120]The court construes Plaintiffs' allegations regarding Defendants' alleged duty to provide "Plaintiffs with fair and honest disclosure of all facts that might be presumed to influence them with regard to its actions, including those facts favorable to a creditor and adverse to Plaintiffs' interest as it relates to the Security Agreement" to be based entirely on the events giving rise to the initial lending transaction and foreclosure action that was the subject of the prior state-court lawsuit.  See Complaint, Docket Entry No. 1, p. 122 ¶ 477.  Accordingly, Plaintiffs' claims based on these facts are barred by the doctrine of res judicata.

Plaintiffs allege that they "were not provided with timely and truthful information regarding the ownership and/or servicing of their loan" because any "transfers" were "shams purportedly effectuated by improperly constituted 'officers' of defendant MERS," resulting in "necessarily false information contained in any 'notice' sent regarding transfers of ownership and/or servicing of the loan."[121] The court has already concluded in § IV above that MERS had authority to assign the Security Instrument and that Plaintiffs have failed to plead facts sufficient to impugn the Assignment's presumptive validity. Accordingly, Plaintiffs' claim that Defendants violated RESPA by providing "false information" regarding the transfer of ownership or servicing rights has no merit.[122]

## VI. Conclusions and Order

For the reasons explained above, the court concludes that Plaintiffs have failed to state a plausible claim for relief under

---

[121]Complaint, Docket Entry No. 1, p. 123 ¶¶ 479-80.

[122]Because the court has concluded that Plaintiffs have failed to state a plausible cause of action against Defendants under any substantive law, no basis remains for the declaratory and injunctive relief requested in their Complaint. See Morlock, L.L.C. v. JPMorgan Chase Bank, N.A., No. H-13-0734, 2013 WL 5781240, at *10-*14 (S.D. Tex. Oct. 25, 2013); Morlock, L.L.C. v. JP Morgan Chase Bank, N.A., No. H-12-1448, 2012 WL 3187918, at *7 (S.D. Tex. Aug. 2, 2012), aff'd, No. 12-20623, 2013 WL 2422778 (5th Cir. June 4, 2013). Accordingly, Plaintiffs' request for declaratory and injunctive relief will be dismissed.

any cause of action advanced in their Complaint.  Defendants'
Motion for Judgment on the Pleadings (Docket Entry No. 12) is
therefore **GRANTED**.

     **SIGNED** at Houston, Texas, on this 31st day of January, 2014.

                                       SIM LAKE
                    UNITED STATES DISTRICT JUDGE